AO 91 (Rev. 11/11) Criminal ComplaintAUSA Matthew J. McCoubric (312) 353-5366

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



FILED
9/11/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSHUA KADISON | CASE NUMBER:<br><br>**20 CR 622** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief:

(1) On or about May 8, 2020, at West Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 922(a)(3) | did willfully transport into the State of Illinois, his state of residence, a Springfield Armory, model Saint Victor, 5.56 caliber AR-15 rifle, bearing serial number ST242383 |

(2) On or about May 20, 2020, at West Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 922(a)(3) | did willfully transport into the State of Illinois, his state of residence, a Romarm, model Romak 992, 5.45 caliber rifle, bearing serial number 2-01386-99. |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

s/Matthew Ward - by consent/JC
Matthew Ward
Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: September 11, 2020

*Judge's signature*

City and state: Chicago, IllinoisJEFFREY CUMMINGS, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, Matthew Ward, being duly sworn, state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), and have been so employed since December 2013. As part of my duties as an ATF Special Agent, I investigate the unlawful possession and transportation of firearms.

2. This affidavit is submitted in support of a criminal complaint alleging that Joshua KADISON has violated Title 18, United States Code, Section 922(a)(3). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging KADISON with transporting a firearm into his state of his residence, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge and information provided to me by other law enforcement agents.

## FACTS SUPPORTING PROBABLE CAUSE

4. Based on my knowledge, training, and experience working on federal firearms related investigations, I know that Federal Firearms Licensees ("FFL") in the United States are required to maintain records of all firearms purchased or sold

by the FFL. Upon purchasing a firearm from an FFL, a purchaser is required to fill out a Firearm Transaction Record, or ATF Form 4473. The ATF Form 4473 contains various pieces of personal information to include the firearm purchaser's name, address, and date of birth.

5. I also know that after completing the ATF Form 4473, the purchaser must submit to a background check and comply with any state laws before the FFL can transfer the firearm to the purchaser. The purchaser must sign the ATF Form 4473 certifying the information listed on the form is true, correct, and complete, including that the purchaser is the true purchaser of the gun. After these steps have taken place, the FFL may transfer the firearm to the purchaser. The ATF Form 4473 is then required to be maintained at the FFL for a period of 20 years or shipped to ATF if the FFL goes out of business.

6. ATF generates reports regarding firearm purchases and the use of firearms. Those reports include a Firearm Trace Report. When a firearm is recovered by law enforcement, its identifying information (including the make, model, serial number and caliber) into the E-Trace system. The system allows agents to determine the original purchaser of the firearm.

7. I also know that to legally purchase a firearm in Illinois, a potential purchaser must submit an application to the Illinois State Police for a Firearm Owners Identification Card ("FOID:). The FOID application requires an applicant to provide personal identifying information, including addresses, and to answer

truthfully questions related to the applicant's criminal history and certain medical history.

### KADISON is Twice Denied a FOID Card in Illinois

8. Based upon my training and experience, I know that Illinois law prohibits any individual who has been a patient in a mental institution or any part of a medical facility for the treatment of mental illness within the past five years from being issued a FOID card. Wisconsin law does not require a permit to purchase a firearm.

9. According to records maintained by the Illinois State Police, KADISON applied for a FOID on two occasions:

    a. On or about September 18, 2017, KADISON submitted a FOID Application. In the application, KADISON answered "YES" to the question, "Within the past 5 years (preceding the date of this application), have you been a patient in a mental institution or any part of a medical facility for the treatment of mental illness?" The Illinois State Police denied this application.

    b. On or about September 17, 2019, KADISON submitted another FOID Application. In the application, KADISON answered "YES" to the question, "Within the past 5 years (preceding the date of this application), have you been a patient in a mental institution or any part of a medical facility for the treatment of mental illness?" The Illinois State Police denied this application.

### KADISON Purchases Two Firearms in May 2020

10. According to Wisconsin DMV records, on or about May 8, 2020, KADISON obtained a Wisconsin driver's license. According to an ATF form 4473, on the same date, Firearm Dealer A, located in Waukesha, Wisconsin, transferred to KADISON one Springfield Arms, model Saint Victor, 5.56 caliber rifle bearing serial number ST242383.[1] The accompanying transaction receipt shows that in addition to the firearm, KADISON purchased a case of ammunition. On the Form 4473, KADISON listed his address as Address B, in Milwaukee, Wisconsin.

11. According to a second Form 4473, on May 20, 2020, Firearm Dealer B, located in West Allis, Wisconsin, transferred to KADISON one Romarm, model Romak 992, 5.45 caliber rifle, bearing serial number 2-01386-99.[2]

***Police Receive Report That KADISON Is Armed and Suicidal (July 29, 2020)***

12. On or about July 29, 2020, the St. Charles Police Department received a report from Caller A, reporting from a doctor's office that KADISON was suicidal and that KADISON owned firearms. According to the report, Caller A was on the phone with KADISON, and believed that he or she heard KADISON loading a firearm over the phone. Caller A advised that KADISON stated that he was driving to the St. Charles Police Department.

13. KADISON arrived at the St. Charles Police Department, where he was met by multiple officers and detectives. When asked if he had any weapons,

---

[1] The 4473 mistakenly identifies the firearm type as a pistol.

[2] The 4473 identifies the firearms as a Romar, model AK-74 rifle. The Form 4473 mistakenly lists the serial number as "2-10386-99," but the accurate serial number is reflected on the attached receipt.

KADISON advised that he did possess firearms, but there were none currently on his person or in his car.

14. KADISON provided officers with a Wisconsin driver's license and advised that he did not need a FOID card [in Illinois] because he had a Wisconsin driver's license. KADISON stated, in sum and substance, that he was "in transition" to moving to Wisconsin from Address A. KADISON further advised:

    a. He was employed by Business A and was currently assigned to a location in Bourbonnais, Illinois. KADISON advised officers that he was not working at Business A in Wisconsin, because he was waiting for a position to open up there.

    b. KADISON has a Wisconsin driver's license and lives in Wisconsin, so he does not need a FOID card.

15. KADISON consented to a search of his vehicle. No firearms were recovered there.

### *KADISON's Residence is in West Chicago, Illinois, Where the Two Firearms Were Found*

16. On or about July 29, 2020, officers interviewed KADISON's father by phone. His father advised, among other things, that:

    a. KADISON is an Illinois resident who resides with him full time at Address A, in West Chicago, Illinois.

    b. KADISON has never lived in Wisconsin or attended school in Wisconsin.

    c. KADISON owns a firearm, but KADISON's father did not know what kind or where it would be stored.

5

17. Officers traveled to Address A and spoke with KADISON's mother, who advised:

    a. KADISON had a Wisconsin driver's license and gun permit.

    b. KADISON owned a firearm, which she described as bigger than a pistol, but smaller than a shotgun.

    c. KADISON stored the firearm in a large case, inside a lockbox, in his bedroom.

    d. She had observed the firearms and ammunition in KADISON's bedroom.

18. KADISON advised officers that he was employed by Business A, located in Bourbonnais, Illinois. Business A is a retail store that, according to its website, has 21 locations in Illinois and 11 locations in Wisconsin. On or about August 17, 2020, Business A confirmed that KADISON was an employee, and on his employment paperwork had identified his address as Address A, in West Chicago. On or about August 18, 2020, Business A advised that KADISON had, that day, submitted a new address for him, as Address B in Milwaukee, Wisconsin.

19. KADISON consented to a search of his bedroom at Address A. Officers also obtained a search warrant for said premises. KADISON advised officers that, inside the bedroom, he possessed an AK-47 style rifle, an AR-15 style rifle, and ammunition. In his bedroom, officers found, among other things:

    a. One Springfield Arms, model Saint Victor, 5.56 caliber rifle bearing serial number ST242383.

6

      b.    One Romarm, model Romak 992, 5.45 caliber rifle, bearing serial number 2-01386-99.

      c.    Hospital discharge paperwork dated November 3, 2017, listing the patient as KADISON.

      d.    A receipt from Firearm Dealer A, for the firearm bearing serial number ST242383.

      e.    A receipt from Firearm Dealer B, for the firearm bearing serial number 2-01386-99.

      f.    Maps of Illinois and the Chicago metropolitan area.

      g.    DuPage County expungement records for court cases, at the request of KADISON.

20.    According to Illinois Secretary of State records, there are two vehicles registered to KADISON at Address A in West Chicago, Illinois.

21.    On both of the FOID applications discussed above, KADISON listed his address as Address A, in West Chicago, Illinois.

22.    On or about August 19, 2020, officers with the West Chicago Police Department spoke to Individual A at Address B, in Milwaukee. Individual A advised that Individual A is the owner of Address B, and that Individual A and KADISON lived in the downstairs unit.[3] Individual A stated that Individual A is the owner of Address B, and that KADISON signed a lease to live there on or about May 8, 2020. Individual A also stated that:

---

[3] Address B is a residence with an upper unit and a lower unit.

7

      a.      KADISON works for a rideshare service and delivers groceries.

      b.      KADISON spends most nights at Address B.

      c.      KADISON travels back and forth to West Chicago because he is close with his parents.

23.    Based on my training and experience, the statements of KADISON's parents on or about July 29, 2020, the items found in KADISON's bedroom at Address A, KADISON's statements, the timing of KADISON's alleged move to Wisconsin and his purchase of a firearm, and KADISON's prior denied applications for a FOID card in Illinois, I believe that: (a) in May 2020, KADISON's true residence was Address A in West Chicago, Illinois; (b) KADISON knew that he could not legally purchase a firearm in Illinois, so obtained a straw address and driver's license in Wisconsin for the purpose of acquiring firearms in that state; (c) KADISON purchased the firearms described above in Wisconsin; and (d) KADISON transported the firearms from Wisconsin to Address A in Illinois, which was his residence at the time.

### *KADISON Does Not Have a License to Import Firearms*

24.    According to ATF records, KADISON does not currently hold, nor has ever applied for, a license to import, manufacture, or sell firearms.

### **CONCLUSION**

25.    Based on the foregoing facts, I respectfully submit that there is probable cause to believe that:

      a.    On or about May 8, 2020, JOSHUA KADISON did willfully transport into the State of Illinois, his state of residence, a Springfield Armory, model Saint Victor, 5.56 caliber AR-15 rifle, bearing serial number ST242383, in violation of Title 18, United States Code, Section 922(a)(3); and

      b.    On or about May 20, 2020, JOSHUA KADISON did willfully transport into the State of Illinois, his state of residence, a Romarm, model Romak 992, 5.45 caliber rifle, bearing serial number 2-01386-99, in violation of Title 18, United States Code, Section 922(a)(3)

FURTHER AFFIANT SAYETH NOT.

_s/Matthew Ward - by consent/JC_
Matthew Ward
Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives

SWORN TO AND AFFIRMED by telephone September 11, 2020.

_____
Honorable JEFFREY CUMMINGS
United States Magistrate Judge

9